YAHOO INC is a non-profit organization based in New York City, United States.  YAHOO INC is a non-profit organization based in New York City, United States. YAHOO INC is a non-profit organization based in New York City, United States.  The District Court below committed error in its handling of the sole alleged point of novelty of Claim 45, which is the sole claim at issue on appeal. And that point of novelty is the phrase, overwrite authorization. In particular, the District Court construed this phrase, and it construed it as requiring an authorization to replace an existing background reference in a message. But the Court neglected to use that construction in denying my client YAHOO's JMAW under the undisputed evidence. So the Court construed it one way, and then did not use that construction in denying the JMAW. The construction the Court necessarily used in denying the JMAW will read directly into the prior art of record, which I'd like to go into. And yet, again, in finding that our design around, in which we removed the accused enable button, which was pointed to as the overwrite authorization, in analyzing that, the Court flipped again and used a broad construction of overwrite authorization. So the main issue I'd like to address in my time today is the Court going back and forth on this sole point of alleged novelty, overwrite authorization, in the patent. Now, let's start with the construction that the District Court provided, because the parties briefed this phrase, and it was construed. The Court construed overwrite authorization is requiring, and I quote, an approval to replace an existing background reference in an end-user communication message, and then it goes on to say with another background reference. So the claim clearly contemplates that you have a message, there's a background reference in the message, and the overwrite authorization is an approval to replace that background reference in that message with another background reference. Well, it is undisputed, Your Honors, that in this case the accused technology, Yahoo's instant messenger technology, that at no time between the birth of a message and the end of the life of a message is anything ever inserted and replaced in the message. So, for example, if John sends a message to Millie, this is a peer-to-peer technology, and John's computer will populate a packet with message content in a number of fields, one of which is the IMV ID, which they have pointed to as being the background reference. That message then gets transferred to Millie, and there's nothing that happens to that message. Nothing is replaced, no existing background reference is ever replaced in the life of that message. It gets transferred to Millie, then Millie's computer deconstructs it, takes out the fields, and then populates it into different buffers, and it goes into an application program. During the transmission of that message from one point to the other, nothing is ever replaced or inserted, and that's undisputed, undisputed facts about how this works. What about Goldberg's testimony about how the buffer works? Well, this is what the district court did, is it adopted… Mr. Chairman, you're not disputing the definition of the message, right? We have not appealed the definition of end-user communication message, Your Honor, and in that construction, Your Honor, we are not. And the testimony from Goldberg, as I read it, was the buffer is a location where the set of data resides. Yes, a buffer is used in any e-mail system where you go back and forth. There's a set of buffers in the actual computer, both the sender and the recipient, and they get replaced every time there's a new e-mail created, there's a new e-mail received. This is well known in the art. Goldschmidt teaches this. If you read Goldschmidt's reference, there's multiple references to buffers. Anyone of skill in the art would know it during this time frame. The way buffers work is they're a temporary memory storage that gets… I understand that, but I'm looking at Goldberg's testimony at A2351.313, where he's talking about the situation of message put in the same memory location and it overrides the previous message. You agree with that, don't you? Yes, he says. Is that the way Yahoo Messenger program works? Yes, he says. Now, the jury hears that, right? I realize that there may be some dispute as to whether Goldberg was right about exactly what a buffer is and where it is, but that's what the jury heard, right? Your Honor, the buffer is outside of the context of the message. The buffer is something that is used in e-mail systems and all kinds of other systems. The reason why the buffer comes into play is you've got to make the… the replacement has to be in the message. That's correct, Your Honor. The message has to be someplace. You've got to find it. As I read Goldberg to say, it's in the buffer. Whether it's right or wrong is a matter of technology. I'm not certain whether that matters. The jury found that the buffer was where it actually was happening. But what the claim requires, Your Honor… As replaced. Yes, exactly. As construed and not objected to or appealed by the appellee, is that you have an existing end-user communication that has a background reference and you replace that existing background reference, and that never happens. Army is replaced with Honda. Well, what the appellee is doing is saying, the fact that you override a complete electronic message in a buffer as part of after you've received it to take it apart… And part of what you override is the business that has to do with the override, which is the Honda. It's the Army Honda is where the override is occurring. So the fact that you override the whole message, this is a comprising claim. You override a little bit more too. Well, I would disagree with that, Your Honor. I understand, but I want to hear why. Yeah, the why is because what you're authorizing when you have the override authorization is the insertion, insertion of the background reference into an existing message. That is not the same thing as creating a new message, and it's not the same thing as deleting an entire message and replacing it with a new received message. Those are different things. The same thing as an equivalent? Absolutely not, absolutely not. Because the technology that's disclosed in the specification and claimed is a situation where you don't have a peer-to-peer network. What you have is you have a server that the electronic messages, for shorthand I'll just say electronic messages. I understand there's a larger phrase. But these messages get sent by Johnny, and then in the process of transition, if you look at the specification and how they describe it, that message is taken, it exists, and the background That's the preferred embodiment. That's right, but the way that If you look at column 8, column 7-8, right, you're explicitly referring to the preferred embodiment. No question about that. And then you're saying, ha-ha, this invention also covers an implementation where the integrated Anderson use does hold. And there's absolutely no further discussion of it whatsoever. Does there have to be? I would submit yes. If you look at it, I have two points on this. The first point is This is the key to your argument, because, I mean, the A and the one message only all keys to tying this to the preferred embodiment. If we agreed with you that the claim is limited to the preferred embodiment, the three-way test where the message starts off and it gets intercepted by someone who then does something to it and then sends it along, then clearly that's not what's happened here. But why the claim is, why you have to I'm not trying to unduly limit the claim, Your Honor, but the claim says insert and is construed as you have an existing email or electronic message, instant messengers, the accused technology. It has a background reference. You take that out and you replace it with another one. And that is the language of the claim. I'm not saying it necessarily must be limited to the spec, but that is talking about a message is already created, it's already got a background reference, and then you insert after that, you replace after that. Can I just be shorthand? You're in essence arguing that the patent is limited to a three-box communication where you've got a sender or recipient and someone in the middle, and the someone in the middle is doing all the logic work. Now, if I disagree with you and I say the language is at page column 8 means that the logic can be either in the sender or in the receiver's computer and they don't need a middleman, do you lose? Well, first of all, I think Yes or no? Well, no, the answer is no. And let me get to my second point, which is if we don't have this limitation and if simply having buffers on each side meets the claim language, you run smack dab into Goldsmith, which discloses buffers, and anyone of ordinary skill during this time frame would know this is how message systems work. Each of the computers have buffers on them. Goldsmith has buffers, but not the on-off switch. I'm sorry, I didn't hear the whole thing. Not the authorization override. That's not included. Well, we would submit that that is also clearly disclosed in a variety of ways. I'm trying to stick with, sir, if you would, with the claim construction infringement argument. I know there's a validity challenge as well, but it seemed to me that the heart of your case below and here is trying to establish that the claim is limited to the perverted bind. Well, I don't think so, Your Honor. I think that the actual claim language itself, as construed by the court, requires an existing message that has a background reference that you replace. That's what the claim language says. That's why I was talking to your expert, to Goldberg, and what he told the jury, that that's how your system works in the buffer. And if you were to broaden this claim to say just simply replacing buffers on either end of a peer-to-peer email system meets this claim, Your Honor, and I don't have much time, our contention is that would read smack dab into the Gold Guide and to Goldsmith, which plainly talk about doing that. When the term overwrite is used, does that contemplate among its various functions simply replacement of... You're arguing that overwrite here is limited to, in the terms of the claim, limited to the background reference. But I'm trying to get at what Goldberg was saying when he refers to the use of the term overwrite. What is he saying with respect to what happens in the buffer vis-à-vis overwriting? What happens in the... Sorry, Matt, full-scale replacement. It's all full-scale replacement. It's just overwrite. It's not what the claim talks about, where you come in and you insert a background reference into an email message. Instead, it's simply, oh, I got a new message. Erase everything we've got. I think, you know, in the briefs, you've referred to replacement versus overwrite. And, of course, Mr. Goldberg's testimony makes it a little bit more difficult to understand the distinction because he uses the word overwrite, which I take it what you're saying is he really meant replace in this context. Correct, Your Honor. And I believe this is 2.50. I'd like to reserve the rest of my time. We'll save your rebuttal time, Mr. Verhoeven. Thank you, Your Honor. Mr. Simon. Be it pleased the Court. The first thing I'd like to address was the argument by Mr. Verhoeven with respect to the preferred embodiment. They do not appeal a claim construction that would give them the preferred embodiment. They didn't propose a claim construction below that would necessitate the preferred embodiment, the three-box scenario, Judge Klovenger. They don't propose one on appeal. In their opening brief, they claim that the Court misconstrued the word said, which was proposed by Yahoo. In their reply brief, they contend that the judge misconstrued the word a or an, but they don't propose an alternative construction. I have to say I don't understand them to be making the argument that the patent is limited to the preferred embodiment, that is to say a server configuration. Rather, it seems to me they're making a slightly different point, which is if you read the terms of the claim, it's very hard to think of an architecture that doesn't have a server or some equivalent in the system. If that's the point they're making, I take it that there is. They would say if you could come up with a two-part as opposed to a three-part system that meets all the limitations of the claim, that's fine. But that's not us. Now let me ask you in light of that about what I'm struggling with to try to see how this claim really works vis-à-vis what Yahoo does. If I understand it correctly, we have receipt, insertion of background reference, and then transmittal. I won't say then. We have the three elements. I'll take the sequence off the table. I appreciate that you think sequence is not an issue. But in any event, just treating them in any order, what we do know, I take it, is that what is received doesn't have the background reference in it, and that that background reference is added in limitation number two, and that what is transmitted is the message with the background reference. So if we take the word message in this context to mean something to which a background reference is added, then it seems to me the problem is in Yahoo, in the Yahoo system, what is received, that is to say what reaches the final recipient, is a message that has the background reference, which is contrary to at least the construction of the claim that I'm proposing. Do you understand the question? I do, Your Honor. What's wrong with that approach? If I may use my demonstrative here, I think I can help explain it. Please do. This is from page 31 of our brief. Can it be seen by a vote? Well, we can use the brief. Okay, page 31. Basically, as you stated, Your Honor, the claim has three elements. Receipt of an end-user communication message, insertion of something into the end-user communication message, and transmission of the message of that end-user communication message with the inserted background reference in it. The two-box system, which is what Yahoo does, is exactly here. When in Randy's outgoing buffer, before the message is sent, step two, there's an insertion of a reference into a set of data. And there's actually a replacement that takes place. Army is replaced with Honda. So here's the insertion step, the second element of the claim. Of this set of data, this message. And I know that Yahoo argues that, well, the whole message is replaced as opposed to its part. This is an open-ended claim. It's not restricted to just replacing the IMV. Here's our insertion step. We're still on Randy's computer. The message is then transmitted from Randy to Milly. That's the same set of data. That's the same message. There's no third box that it's intercepted by. That same set of data into which the IMV was inserted is then received by the second computer. That's the problem I have with the claim construction, or at least the application of the claim construction that you're proposing, because it seems to me that Claim 45 is talking about receipt of a message, that is to say what in the preferred embodiment occurs at the server. Receipt of a message from a first site, not receipt of a message with the background reference. Well, the claim language certainly doesn't exclude that, Your Honor. Well, I wonder, because the background reference is said to be added in Limitation 2, and then what is transmitted is said to be the message with background reference. You would think if the background reference were to be deemed to be included in what is received, it would say receive an end-user communication message with a background reference from a first site. But that's not required by the claim. The claim doesn't say whether it has it or doesn't have it. The point I'm making is the argument you are making is a sequential preferred embodiment limitation. That very argument is first you must receive the message, then you must insert something, and the third step in treating it like a method claim. They concede, Yahoo concedes in their brief, they're not arguing sequential limitations. So that proposed construction is off the table. I understand that there's an issue with understanding how this works with two boxes, but Yahoo has not appealed a claim construction which would give them the preferred embodiment. But I'll submit to you that there's evidence in the record, and I can show you with this demonstrative, that even if it were required to be performed sequentially, it is. The message, when it's received by Randy, has a background reference in it. It is received by Randy. Then there's an overwrite of that very... Which message? This set of data right here. Now this is where we get into a complication here, because are we talking about... Randy is the one that sent the original message, right? In your example. In my example, no. How do we know how Army got into Randy's buffer? Yeah, that was in my scenario what had happened. Randy received a message, a set of data from Millie. In that message, before it was sent, an IMV was inserted over here. So this was received. It had a background reference in it. That same set of data, there was an overwriting of the IMV, of the background reference, with a background reference to an ad, which is what the claim requires. And then that same set of data was transmitted. So the very set of data, we need to remember, they use the word message, but they forget that the court construed and they don't appeal the construction. Message is a set of data that was transmitted. That's exactly what we have here. This set of data was transmitted over a communications network and resides in the buffer on Randy's computer. It is received first. And it could have been received with no background reference to an advertisement. In this particular example, Millie had selected Army, but Millie could have said, no IMV, no background. And in that instance, that set of data was received, that set of data, something was inserted into it, and then that same set of data was transmitted. So it's exactly the scenario you proposed. Assume that the message that had come from Millie didn't have a background of choice, so the IMV ID thing was blank, but Millie was enabled, and so was Randy. When Randy overwrote blank with, say, either Army or Honda, that was replacing the previous background, which was blank? Yes, which is exactly what the override authorization... I have some water, please. I'm sorry. Exactly what the definition of override authorization was. And this got into, Judge Bryson, your statement about the overriding versus replacing. The claim requires insertion into a message, a set of data, based on an override authorization. The override authorization is an approval given to allow someone to replace the background reference. An approval to replace. Correct. To allow your slip and the other's slip. Correct. Well, it's an approval to replace. I'll say it exactly verbatim then. An approval to replace... In the end-user message. But it's insertion based on an approval to replace. So it's not replacement as opposed to insertion. In this particular situation, in Yahoo's system, when Randy receives the message, he wants to replace a background reference with a background reference to an ad. The approval is given by Millie because she's enabled. Based on that approval, Randy's computer, the program, can now insert a background reference to an ad in response to this background reference. That message is then transmitted. That's exactly, even if the claim were sequentially, had to be performed sequentially, which, again, isn't an issue on this appeal, is met by the Yahoo system. That evidence was undisputed. The only difference that the replacement that takes place is the entirety of the message instead of just the I-M-V-I-D flag? No, because it's an open claim. It's comprising. And so if you want to also replace other things in the message, you certainly can. It's not limited by the claim. The claim doesn't say, and only replace the background. But, of course, in your example, I mean, it's a little hard to follow because in your brief you use Randy as the outgoing and Millie as the incoming, and now you're having Millie ascending and Randy receding, and I realize this is an infinite loop. But anyway, if I follow you, in your example, though, you are still, if it's correct that the term end user communication message when used in the claim without including a reference to the background reference is intended to mean a message without a reference, then your example here is not responsive and doesn't read on, the claim doesn't read on this system, correct? Well, I guess I... Do you disagree with the claim? I take it you're with the premise. Yeah, I understand. Yeah, I mean... I mean, I thought you were responding and saying that even with my proposed construction, this system, the Yahoo system infringes, but I guess the answer is not really. No, it absolutely does. Well, but again, where is the end user communication without that is received that does not contain the background reference? That's the first message that Randy receives from Millie. If you and I are conversing on Yahoo Messenger and we both have them enabled, iEnvironment's enabled, but I just decide I don't want to have a background reference in my message to you, I will send you a message. You will receive that set of data and it will not contain a background reference. It's a null value. They can see that in their brief. So you receive the set of data with a null value. Your computer then, based on my approval, I give you approval to replace my background, will insert a background reference in replacement of that null value. So you've received a background, I'm sorry, you've received a set of data without a background reference, your computer then, based on an override authorization, inserts it, and then that message is sent back to me with Element 3 with the background reference. And that evidence was undisputed. Chris Zito, the Yahoo engineer that drafted it. The transfer operating with Millie is the initiator but with no background reference. Correct. And there were several examples given at trial with both enabled, one not enabled. You know, all of that evidence came in, it came in through Goldberg, Dr. Goldberg, it came in through Dr. Klausner, it came in through Chris Zito. The only other point I'd like to make is I'd like to address this statement about Goldschmidt. Goldschmidt was appending an entire advertisement, attaching it to an email, and sending the email. The advertising age article by Williamson is a Williamson reference that was in front of the patent office, specifically talked about, well, there's no, they're going to have to grapple with when users don't want to receive ads but they want to receive email, you're going to have to deal with that issue. That's what the override authorization solves. Goldschmidt does not disclose an override authorization. With regard to the old systems, right? They're out there, and then there's been a new system. The old system, the district court judge gave you a continuing royalty on the old systems, right? Correct, Your Honor. And I think the argument that I tease out of Yadda's brief is that they got a license with regard to the old systems. The old systems, this is not a method claim. The old system infringed, because they paid the price for the infringement. Well, the point that Yahoo! misses is that Yahoo! uses the computer program to distribute advertisements to users, and they receive revenue from the advertisers. Yahoo! is continuing to use... I mean, an argument would be, you know, if you sell an infringing lawnmower and you get your damages from the person for having infringed on the lawnmower, but the person's got the lawnmower and now can use it. Well, correct. The old systems are continuing, 20 million of them can continue to be used, and if we sustain the finding of infringement, they'll just keep, quote, infringing away. Yes, and if... But isn't that like someone who sells a patented product and you extract your right to exclude at the sale point, right? No, absolutely not, Your Honor, because we are not basing... never did base our infringement argument on the end user's use of the system. It's Yahoo!'s use of the system, and Yahoo! goes out and tells advertisers, we've got 20 million users, 30 million users, we can put your ads in front of them, and receives new money for that. And that's why Yahoo! made a business decision, even after being found to have willfully infringed, to not change the old systems, because if all those users don't have an override authorization, they quit using, Yahoo! has got 3 million users, and the advertisers say, we don't want to buy your ads. So the infringement is based on Yahoo!'s use of the old infringing versions to distribute new ads and make new money that was not accounted for at trial. Okay, any more questions? Can I ask one question? Sure. With regard to the new machine, I took you to say, at least in front of the judge, well, if you want to stop infringing, you can turn off the switch. You know, turn off the override authorization. That's what you said. I did say that in my summation, Your Honor, and if Yahoo! had turned off the switch on all 33 million users and forced the upgrade, I think this wouldn't be an issue here. By turn off the switch, did you mean disable the switch, or did you mean erase the logic that allowed the switch to exist? That's exactly what I meant. I used shorthand. We never contended the box itself was the override authorization. The claim claims a computer program with logic. So what I meant was remove the underlying logic. And what Yahoo! hasn't done is, in order to make those 20 million users of the old version still be compatible with the new version, the logic is still there in all 33 million versions and continues to operate when someone with an old version is using, is conversing with someone with a new version. Any more questions for Mr. Sonner? Thank you, Mr. Sonner. Thank you. Mr. Verhoeven? Briefly, Your Honors, there's two issues that I have with the explanation of how Instant Messenger works with the illustrative that was used. First issue I have is it's misleading and inaccurate to suggest that you have these fields and that only one of the fields gets crossed out and replaced, the IMVID field. That's not the way the system works. It's undisputed. In the buffers, if Johnny sends a message to Millie, Johnny creates a brand new message. Every one of those fields is populated with new data, and then the message gets transmitted. It's also undisputed, and you didn't hear it disputed, that between the transmit and the receipt of that message, between those two points, nothing is ever inserted. No background reference is ever replaced in that transmission. Secondly, the explanation that you heard conflates multiple messages as if they would be the same message. So if Johnny sends a message to Millie and Millie receives it, if Millie responds, what happens on the instant message system is that a brand new message is created, and all of these fields are created and repopulated. That cannot be an insertion, as construed by this Court, of a background reference into an existing message. Let me see if I understand this in terms of Mr. Simon's example. Maybe if you could put the chart back up, because I found that I was having difficulty following the chart. You can make reference to the chart. So, Mr. Simon says, what we're talking about here with a system in which Yahoo would infringe, for example, would be where Millie sends a message to Randy that does not contain a background reference. He says that's the example of I had posited that in Yahoo there's a receipt of something that has a background message. He says that in the Millie to Randy system in Yahoo, that does satisfy the claim limitations construed as I was proposing. Do you disagree with that, and if so, why? Well, I'm not sure I understand exactly, because I'm not sure that this tracks what you just said, but maybe I'm just confused. But if Millie said, as you're saying, Millie sends to Randy. Millie sends to Randy, right. Yes. Empty, empty. Empty one. Well, then, first of all, there's no background reference. Period. Okay? So, the life of that message... The problem, I guess what you're saying, let me see if I understand. Okay. I think I can cut to a spot. Okay. I was focusing in my questioning on logic configured to receive an end user communication from a first site. Yes. That would be Randy's receipt, and my supposition was, because there's no reference to a background reference, that must mean that there could be nothing in the background reference. Okay. So, I follow you. And Mr. Simon says, well, that's what Yahoo does if Millie chooses not to send a background reference to Randy. But the problem, I take it you would say, is that, and you correct me if this isn't right, but that the transmission part of that, which is what's done by Millie, has to be done with the background reference. Absolutely. Okay. There's no message, you can't point to a single message that has all three elements. That's the gist of it. And so, when, just to finish the thought, when Randy receives that message... It's not a message if it doesn't have a background in it? Is that what you're saying? No, there's not, you can't point to a single message where the receipt element and the insertion response to an override element and the transmission element are all present. In a single message? In a single message. Where is the requirement that it has to be a single message? The logic and structure of this claim requires that. Your Honors, let me just pause it. If I were to... I thought that was your A.N. argument that you lost. Well, it's interesting if you review the transcript on that, Your Honors, that what happened, I urge you to read the transcript. This is really an O2 Micro situation. What happened in the transcript here is there was a request by my client to construe SED. And then the judge came back and said, well, how about, if I'm going to do that, then I want to construe... And these are just basic black letter canons of construction. SED and the A.N. A.N. constructions. And the judge came back and said, well, if I'm going to do that, then I should do A or A.N. And then counsel for Yahoo said, well, wait a minute. The issue here is whether all three elements need to be on a single message. And there was extensive argument about that. And the judge said, I'm going to leave it to the jury. He said, I'm going to give an instruction of SED. I'm going to give an instruction of A.N. A.N. And I'm going to let the parties argue whether or not these three elements, whether or not the claims require that these three elements be performed on a single message or you could have the receipt on a message from Johnny, the insert on a separate message from Willie, and the transmit on a message from Paul. And so both, if I could finish that, both sides argued that before the jury. Under O2 micro, that was error. It's the judge's job to deal with important claim construction issues. And this one was the heart of the case. You're not appealing that. Yes, we are. We appealed the... Not appealing SED. Not appealing SED, but the issue isn't whether SED, the canon of construction SED applies or the canon of construction A or A.N. applies. The issue is, in this case, in this intrinsic evidence, does element A, the receipt, B, the insert, and C, the transmit, must those operate on a given message?  Go ahead, Your Honor. Go ahead. If they could operate on different messages, you've destroyed any utility of the invention because you don't have to insert into a message that gets received or transmitted. You're saying, I take it, is that to the extent that the jury might have understood the instructions as giving it leeway to apply the limitations across multiple messages, then that was inconsistent with the proper construction of the claim and to the extent that they applied the proper construction of the claim, there's no evidence to support the verdict. Absolutely, Your Honor. Absolutely. Any more questions? Okay. Thank you. Thank you both. The case is taken under submission.